## CONTRACT FOR SALE OF COAL LANDS.

Circuit Court of Perry County.

TIMOTHY O'FARRELL v. THE SUNDAY CREEK COAL CO.

Decided, November, 1903.

*Specific Performance—Absence of Coal on Two Hundred Acre Tract Not Established by Two Borings—Failure to Perfect Title Does Not Defeat Action for Specific Performance.*

1. In an action upon a contract for the sale of coal land, a defense that there was no mineable or marketable coal under plaintiff's land is not sustained by evidence that two borings on a two-hundred acre tract failed to disclose coal in mineable or marketable quantities when it is admitted that in that neighborhood coal veins appear and disappear unexpectedly.

2. A vendor who has not complied with the terms of his agreement by making a good title, or by conveying or offering to convey at a stipulated day, may still obtain a decree for specific performance notwithstanding his delay, provided it is not intentional, unreasonably long, or so injurious to the vendee that an enforcement would be inequitable.

WINCH, J. (orally, sitting in place of Donahue, J.) ; VOORHEES, J., and McCARTHY, J., concur.

The petition in this case alleges that on May 10, 1900, the plaintiff was the owner in fee simple of all the coal in, on and under certain real estate, described as two hundred acres of land in Monroe township, Perry county, Ohio, and that on that day he contracted in writing to sell the same to the defendant for the sum of $4,000, $1 being paid at the time, and the balance of $3,999, to be paid when the deed should be delivered; proper deed, together with abstract showing title to be in fee simple, free, from all encumbrances, to be delivered on demand on or before September 1st, 1900; that demand for deed and abstract were made upon him May 23, 1900, that he proceeded at once to the preparation of his abstract and delivered it; that defendant took possession of the premises and exercised ownership over it.

The petition further alleges that plaintiff has always been and still is ready to perform said contract, and on January 19, 1901, tendered a deed to the defendant and demanded payment of balance of the purchase price, which was refused, wherefore he prays judgment that defendant perform said agreement and pay plaintiff the sum of $3,999, with interest from January, 1901.

The answer of the defendant company contains nine defenses, which may be grouped as follows:

The first defense is a general denial with a specific denial that plaintiff was the owner in fee simple of said property, on May 10, 1900.

The second and third, fifth, seventh and ninth defenses aver that the defendant could not in law, under its charter, enter into the agreement mentioned; that the person representing the defendant in the transaction, though its agent, had no authority to bind it to the agreement; that said lands were not underlayed with a coal measure that could either be mined or marketed or contained any such coal; that upon discovering there was no mineable or marketable coal under said lands, the defendant declined to take said premises; that by reason of there being no such coal under said lands the consideration for the transaction had failed.

It will be noticed that these five defenses are based upon the claim that there was no mineable or marketable coal under said lands, and it may be observed that the burden of proving such fact is upon the defendant.

The fourth and sixth defenses allege that plaintiff was not in position on September 1st, 1900, to comply with the terms of said agreement, because his title was not good and sufficient as stipulated therein.

The eighth defense alleges in substance, that defendant was induced to enter into said agreement by the representations of plaintiff that said lands contained from six to seven feet of coal; that said representations were false, and that the contract was tainted with fraud.

While the nine defenses are separately stated and numbered and an effort has been made to group and classify them, it is

proper to state that they are so interwoven and interdependent that to support them all defendant must prove but four things:

1st.   That plaintiff's title to the property was defective.

2d.   That the contract was superinduced by the fraud and misrepresentations of plaintiff.

3d.   That there was no mineable or marketable coal on the property.

4th.   That the plaintiff himself failed to comply with the terms of the contract by delivering a deed and abstract within the time limited by the agreement.

A reply to said answer denies all its allegations, except as to the delivery or tender of deed within the time limited by the agreement, as to which proposition the plaintiff says that the time for the delivery thereof was extended by defendant.

There are few propositions of law in this case, and as to the facts it is sufficient, without commenting on the evidence, to say that we find therefrom that plaintiff's title is as alleged by him, and no fraud or misrepresentations on his part has been proven.   Indeed, at the hearing counsel for defendant abandoned such claim:

Is there mineable or marketable coal under plaintiff's property.

As evidence that there is not, defendant submits the results of the drilling of two holes, one at the extreme north and one at the extreme south line of the property, perhaps half a mile apart, and drilling on property in the neighborhood, which showed too little coal to be mined or marketed.

We can not say from this testimony that this two hundred acre farm does not contain mineable and marketable coal. There is a failure of proof.   At the hearing counsel for defendant admitted that in Monroe township, where the property in controversy is situated, there are faults ·and other irregular geological formations to such an extent that viens of coal are present and disappear most unexpectedly and unaccountably. The presence or absence of coal veins, their extent and continuity can only be determined by drilling.   In view of these admissions and in the absence of any testimony of experts or 6thers

tending to show the geological formation of the property in question, or the extent of the field indicated by ·witnesses in this case, we can not determine from the fact that two drillings were made on the extreme north and south limits of the farm in question, that there is no mineable or marketable coal on the property.

We have gone into an examination of this question as carefully as possible, although not only the agreement sued upon in this case provides for no drilling or tests of the property, such provision in an original draft thereof having been ·stricken out because plaintiff refused· to agree to it, but also notwith-· standing it is in evidence that the property was under option to defendant and its assigns for six months previous to the date of the agreement, with privilege to drill and test for coal, which privilege it neglected to avail itself of.

It therefore appears to us that ·the defendant has failed to establish any of its defenses, which are based upon there being no mineable or marketable coal upon the property.   We reach this conclusion without any reference to the legal· merit of said defenses had defendant proved the fact alleged.

It remains to consider those defenses which are based upon the claim that plaintiff failed to deliver a deed of the property and abstract thereof within the time limited by the agreement.

The evidence upon this subject is ·somewhat conflicting, but we think plaintiff has fairly established his claim that time for the delivery of abstract and deed was extended by defendant, and strict compliance on his part with this provision of the agreement was waived by defendant.

We are further of the opinion that time was not of the essence of this contract.   The clause of the contract under consideration reads as follows:

''And the first parties will deliver said deed to the second party, its successors or assignees on demand·, on or before the 1st day of September, 1900, upon the payment to said first parties by the second party of the purchase price herein stipulated.''

''Delivery of deed by vendor.   The doctrine equally applies to the purchaser and to the vendor.   A vendor, who has not

complied with the terms of his agreement by making a good title, or by conveying or offering to convey, at a stipulated day, may still obtain a decree for specific performance notwithstanding his delay, provided it is not intentional, unreasonably long, or, so injurious to the vendee that an enforcement would be inequitable. This results directly from the operation and effect of the contract in equity, already described, which vests the equitable estate in the purchaser, so that, being the beneficial owner of the subject-matter from the time of concluding the agreement he is not necessarily nor ordinarily injured, so as to render an enforcement unjust, by a delay in carrying out the contract and conveying to him the legal estate. If the vendor is unable to show a good title at the time prescribed in his contract, or even at the commencement of his own suit, it is sufficient therefore, if he perfects it before the final hearing, or the report on title made in the progress of the cause by the master or referee."

The preceding citation of authority is quoted only from *Pomeroy on Specific Performance*, Section 376.

See also *Brock et al* v. *Hidy et al*, 13 O. S., 306; *Gibbs* v. *Champion*, 3 Ohio, 325; *Hager* v. *Reed*, 11 Ohio State, 634.

Having found upon all the material issues of the case in favor of plaintiff he is entitled to the relief prayed for in his petition and decree may be drawn accordingly.